UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA NEGHERBON,<br><br>   Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, et al.,<br><br>   Defendants. | Case No. 15-cv-02368-JCS<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 21 |

## I.  INTRODUCTION

Plaintiff Angela Negherbon brought this employment discrimination action against Defendants Wells Fargo Bank, Wells Fargo Bank N.A., and Christine Deakin in San Francisco County Superior Court. On May 28, 2015, Defendants removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Def.'s Notice of Removal (dkt. 1) at 2. Plaintiff moved on September 4, 2015, to remand the case to state court, asserting that the Court lacks diversity jurisdiction because Ms. Negherbon and Ms. Deakin are both citizens of California. Motion for Remand ("Motion," dkt. 21) at 1. Defendants contend that removal was proper because Ms. Deakin is a "sham defendant" whose citizenship should be disregarded for the purposes of diversity jurisdiction. The Court held a hearing on the Motion on Friday, October 16, 2015, at 9:30 a.m. For the reasons stated below, Plaintiff's motion is GRANTED.[1]

## II.  BACKGROUND

### A.  Factual Background[2] and the Claims

Ms. Negherbon worked as an Executive Assistant for Wells Fargo Bank in San Francisco,

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[2] The factual background is based on the allegations of the First Amended Complaint ("FAC," dkt. 1, Ex. B).

1    reporting to Ms. Deakin from April of 2011 until Ms. Negherbon began a medical leave of

2    absence on December 14, 2012, to have part of her thyroid removed.  First Amended Complaint

3    ("FAC," dkt. 1, Ex. B) ¶¶ 11–13.  After the initial surgery and treatment indicated Ms. Negherbon

4    had papillary cancer, she had a second surgery to remove the rest of her thyroid on December 26,

5    2012.  *Id.* ¶ 13.  Ms. Negherbon remained on a leave of absence until Wells Fargo terminated her

6    employment on May 9, 2014.  *Id.* ¶ 38.  During her leave of absence, Ms. Negherbon claims that

7    Defendants failed to accommodate her disability, denied her attempts to return to work, and

8    rejected her applications for other positions for which she was qualified.  *Id.* ¶¶ 18–29, 32–25.

9    She asserts claims for, *inter alia*, employment discrimination, harassment, and illegal termination

10   during her leave of absence and eventual firing.  *Id.* ¶¶ 46–149.

11           With respect to Ms. Deakin, the FAC makes the following allegations.  Ms. Deakin was

12   employed in the position of Executive Vice President and Head of Business Services as Ms.

13   Negherbon's supervisor.  *Id.* ¶ 11.  Ms. Deakin had actual knowledge of Ms. Negherbon's medical

14   condition and protected status.  *Id.* ¶ 15.  In March of 2013, Ms. Deakin informed Ms. Negherbon

15   that she could not return to work in late March while Ms. Deakin would be on vacation, and Ms.

16   Deakin did not say when Ms. Negherbon would be able to return.  *Id.* ¶ 18.  In April of 2013, after

17   Ms. Deakin learned that Ms. Negherbon would not be able to return to work on May 1, Ms.

18   Deakin spoke to Ms. Negherbon on the phone, expressed that she was "disappointed," and asked

19   whether Ms. Negherbon would require further medical treatments.  *Id.* ¶ 21.  Ms. Deakin then

20   informed Ms. Negherbon that Wells Fargo needed to fill the position because of business needs

21   and sent a letter to Ms. Negherbon confirming this decision.  *Id.* ¶¶ 21–23.  Finally, the complaint

22   alleges that it was Ms. Deakin's decision to replace Ms. Negherbon.  *Id.* ¶ 29.

23           The operative complaint also includes allegations against the Defendants collectively.  The

24   complaint alleges that Defendants lied about the true reasons for Ms. Negherbon's termination.

25   *E.g. id.* ¶¶ 97, 148.  The operative complaint also alleges that Defendants knew of and failed to

26   take corrective action to address a hostile work environment.  *Id.* ¶¶ 91, 113.  The complaint

27   further alleges that in 2014, two important communications from Ms. Negherbon were simply

28   ignored, though the complaint attributes these actions to Ms. Price and Wells Fargo.  *Id.* ¶¶ 37–38.

In addition to the factual allegations against the collective Defendants, the complaint makes general allegations against the Defendants, two of which Ms. Negherbon cites in her briefing on this Motion. First, the complaint states that any reference to an act or omission by a single Defendant "shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and severally." *Id.* ¶ 9. Second, the complaint alleges that each Defendant "confirmed and ratified" the acts and omissions of the other Defendants and that each Defendant "completely dominated and controlled" the other Defendants. *Id.* ¶ 8.

Based on these allegations, the FAC asserts nine causes of action. *Id.* at 1. The two causes of action against Ms. Deakin—which are at issue in this Motion—are for harassment under the California Fair Employment and Housing Act (FEHA, Cal. Gov. Code §§ 12900–12996) and for Intentional Infliction of Emotional Distress (IIED) under California common law. FAC ¶¶ 84–98, 139–49. The FEHA cause of action alleges that Defendants subjected Ms. Negherbon to "unwanted harassing conduct[] and a hostile work environment, based on medical condition and physical disability." *Id.* ¶ 89. The IIED cause of action alleges that Defendants' conduct was "outrageous and outside the normal scope of the employment relationship" and that Defendants engaged in this conduct "with the intent to inflict, or with reckless disregard of the probability of inflicting, humiliation, mental anguish, and severe emotional distress upon Plaintiff." *Id.* ¶ 140.

**B.    Procedural History**

Ms. Negherbon filed a civil complaint in the Superior Court for the County of San Francisco on April 14, 2015. Dkt. 1, Ex. A. The original complaint asserts eight causes of action and names only Wells Fargo Bank as the Defendant. *Id.* at 1. On April 28, 2015, Ms. Negherbon filed her first amended complaint, which is the operative complaint in this case. FAC at 1. The amended complaint names as Defendants Wells Fargo Bank, Wells Fargo Bank N.A., and Christine Deakin. *Id.* In the amended complaint, Ms. Deakin is named as a Defendant for the fourth cause of action for harassment under FEHA and for a new, ninth cause of action for IIED. *Id.* ¶¶ 139–49.

On May 1, 2015, four days after filing the FAC, Ms. Negherbon filed an administrative complaint with the California Department of Fair Employment and Housing (DFEH) and received

3

1  a right-to-sue notice from DFEH on the same day. Mot., Secrest Decl., Ex. A (DFEH Complaint
2  of Employment Discrimination dated 5/1/2015). The administrative complaint names Wells Fargo
3  as the respondent and also Christine Deakin as a co-respondent, though the administrative
4  complaint makes no specific allegations against Ms. Deakin. *Id.* at 5. The DFEH complaint
5  alleges that once Ms. Negherbon was ready to return to work in June of 2013, she was not allowed
6  to return. *Id.* The DFEH complaint further alleges that Ms. Negherbon applied for several
7  positions with Wells Fargo for which she was qualified, but she was not offered any position at
8  comparable pay to her original position. *Id.* Finally, the DFEH complaint alleges that Ms.
9  Negherbon's employment was terminated on May 9, 2014, "based upon false allegations." *Id.*

10  Defendants removed the case to this Court on May 28, 2015, on the basis of diversity
11  jurisdiction under 28 U.S.C. § 1332. Notice of Removal at 2. Defendants allege that the amount-
12  in-controversy requirement is satisfied because Plaintiff's claimed damages plausibly exceed
13  $75,000. *Id.* ¶¶ 21–27. Defendants contend that complete diversity exists because Plaintiff is a
14  citizen of California and Defendant Wells Fargo is a citizen of South Dakota. *Id.* ¶¶ 7–8.
15  Defendants contend that even though Ms. Deakin is a citizen of California,[3] Ms. Deakin is a
16  "sham defendant" whose citizenship should be disregarded for the purposes of diversity
17  jurisdiction. *Id.* ¶¶ 10–20. According to Defendants, Ms. Deakin is a "sham defendant" because
18  Ms. Negherbon could not possibly recover on either of her two causes of action against Ms.
19  Deakin. *Id.*

20  In particular, Defendants assert that each cause of action against Ms. Deakin necessarily
21  fails for two reasons. Defendants contend that the FEHA cause of action for harassment against
22  Ms. Deakin necessarily fails because a supervisor's personnel management actions cannot
23  constitute harassment under the California Supreme Court's decision in *Reno v. Baird*, 18 Cal. 4th
24  640 (1998). Notice of Removal ¶ 14. According to Defendants, the "only facts asserted against
25  [Ms. Deakin] are for personnel management activity" for which Ms. Deakin cannot be liable under

---

[3] The Notice of Removal does not state that Ms. Deakin is a citizen of California, but Defendants do not appear to contest this point. *See*, *e.g.*, Opp'n (dkt. 23) at 1 ("Plaintiff's sole basis for seeking remand is Deakin's California citizenship . . .").

*Reno*. *Id.* Defendants further contend that Ms. Negherbon failed to timely exhaust administrative remedies with respect to Ms. Deakin by failing to file an administrative complaint within one year of "the date upon which the alleged unlawful practice or refusal to cooperate occurred" as required by California Government Code section 12960(d). Notice of Removal. ¶ 11–13. Here, Defendants argue that Ms. Negherbon's May 1, 2015, complaint naming Ms. Deakin as a co-respondent is untimely because the latest conduct alleged against Ms. Deakin in the civil complaint occurred on April 30, 2013. *Id.* ¶ 14.

With respect to Ms. Negherbon's IIED cause of action, Defendants contend that the exclusive remedy provisions of the Workers Compensation Act (WCA) prevent Ms. Negherbon from bringing this common law claim for workplace emotional injuries. *Id.* ¶ 17 (citing Cal. Lab. Code §§ 3600–3602). Defendants further argue that Ms. Negherbon's claim against Ms. Deakin does not fall within an exception to Workers' Compensation exclusivity because the California Supreme Court's decision in *Miklosy v. Regents of the University of California*, 44 Cal. 4th 876 (2008), placed IIED claims outside the scope of exceptions to the exclusivity rule. Notice of Removal ¶ 18. Finally, Defendants contend that an individual manager cannot be liable for emotional distress injuries arising from personnel management activities of the type alleged against Ms. Deakin in the civil complaint. *Id.* ¶¶ 15–19.

### C.   Plaintiff's Motion to Remand and Disputed Issues

Ms. Negherbon moved to remand the case to state court on September 4, 2015. Mot. at 1. Ms. Negherbon claims that Ms. Deakin is not a fraudulently joined "sham defendant" and that Defendants are incorrect on each of the four points they articulate as to why the claims against Ms. Deakin fail. *Id.* at 6, 8–9. Accordingly, Ms. Negherbon argues that remand is appropriate because Ms. Deakin's California citizenship defeats complete diversity. *Id*. at 1.

#### 1.   Ms. Deakin's Liability for Harassment under FEHA

The parties agree that personnel management actions such as termination and reassignment do not constitute harassment for which an individual supervisor may be liable under FEHA. Defendants contend that "[t]he only facts asserted against Deakin in the FAC are for . . . personnel management activity" and thus cannot constitute harassment. Opp'n (dkt. 23) at 8. Plaintiff

contends that the complaint alleges "malicious, demeaning, outrageous" conduct that goes beyond "mere personnel management activity" and constitutes harassment for which Ms. Deakin may be individually liable. Mot. at 7.

### 2. Exhaustion of Administrative Remedies

Ms. Negherbon contends that her May 1, 2015, administrative complaint naming Ms. Deakin as a co-respondent satisfies FEHA's requirement to exhaust administrative remedies as a prerequisite to a civil suit. Mot. at 6. Defendants have provided two declarations with accompanying exhibits in support of their argument that the complaint is untimely. First, Defendants have submitted a declaration from Ms. Deakin, in which Ms. Deakin states that she has had no contact with Ms. Negherbon since April of 2013 and played no role in management decisions about Ms. Negherbon's job search leave. Opp'n, Deakin Decl. ¶¶ 5–6.

Second, Defendants have submitted a declaration from Thomas Kaufman, counsel for Defendants. In the declaration, Mr. Kaufman states that on April 22, 2015, before the original civil complaint was served on Wells Fargo, he spoke by phone with David Secrest, Plaintiff's counsel. Opp'n, Kaufman Decl. ¶ 2. Mr. Kaufman states that during their conversation, he told Mr. Secrest that the Ninth Circuit has found Wells Fargo to be a citizen of South Dakota. *Id.* According to Mr. Kaufman, the original complaint was never served on Wells Fargo after this conversation. *Id.* ¶ 3. Instead, Mr. Kaufman states that in the days following his phone call with Mr. Secrest, Ms. Negherbon filed an amended civil complaint and a new DFEH complaint, both of which—for the first time—named Ms. Deakin as a Defendant or Respondent respectively. *Id.* The declaration includes as exhibits three administrative complaints filed on earlier dates by Ms. Negherbon, each of which names Wells Fargo as the only respondent and alleges similar conduct to the FAC and the DFEH complaint filed on May 1, 2015. *See id.*, Ex. A (EEOC Charge of Discrimination dated 1/23/2014), Ex. B (EEOC Charge of Discrimination dated 6/26/2014), Ex. C (DFEH Complaint of Employment Discrimination dated 1/21/2015).

Ms. Negherbon counters that the allegations of the civil complaint contradict Ms. Deakin's declaration by alleging that Ms. Deakin acted in concert with others to create a hostile work environment through the date of Ms. Negherbon's termination on May 9, 2014. Reply (dkt. 25) at

6

1  9. Ms. Negherbon argues that the administrative complaint was thus timely because it was filed
2  less than one year later, on May 1, 2015. *Id.* Ms. Negherbon further contends that under the
3  continuing violation doctrine, Ms. Deakin can be liable for harassing conduct that occurred more
4  than one year before the administrative complaint naming Ms. Deakin. *Id.*

### 3. Workers' Compensation Exclusivity

The parties agree that the exclusive remedy provisions of the Workers' Compensation Act generally bar IIED claims but disagree on whether Ms. Negherbon's claim fits within an exception to the Workers' Compensation exclusivity rule as explained by the California Supreme Court in *Miklosy v. Regents of the University of California*, 44 Cal. 4th 876 (2008). Defendants contend that after *Miklosy*, only actions *against an employer* for wrongful termination in violation of public policy are excepted from Workers' Compensation exclusivity. Opp'n at 11–12. Plaintiff contends that her IIED claim for emotional distress injuries caused by illegal discrimination in violation of public policy also fits within an exception to Workers' Compensation exclusivity.

### 4. Ms. Deakin's Liability for IIED

Defendants contend that the IIED cause of action fails because the complaint alleges only the type of "personnel management activity" for which an individual supervisor may not be liable. Opp'n at 12. Ms. Negherbon counters that this mischaracterizes the complaint and that the allegations against Ms. Deakin are not limited to personnel management activities. Mot. at 8.

## III. ANALYSIS

### A. Legal Standard

A defendant may remove a civil action filed in state court if the action could have been filed originally in federal court. 28 U.S.C. § 1441. A plaintiff may move to remand the case to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). Federal subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), based on diversity, requires complete diversity of citizenship and an amount in controversy in excess of $75,000.[4] However, where a non-diverse defendant has been

---

[4] The Court finds—and the parties do not dispute—that the jurisdictional amount in controversy requirement is satisfied because Ms. Negherbon's claim of damages has been made in good faith

7

fraudulently joined, diversity jurisdiction may still exist where the plaintiff is a citizen of the same state as the "sham defendant." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

"Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Just as there is a presumption against removal, there is a "general presumption against fraudulent joinder." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009). When analyzing the issue of fraudulent joinder, "[a]ll doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent." *Krivanek v. Huntsworth Grp. LLC*, No. 15-CV-02466-HSG, 2015 WL 5258788, at *2 (N.D. Cal. Sept. 9, 2015) (quotation omitted). Accordingly, the Court must grant the motion "unless the defendant shows that the plaintiff would not be afforded leave to amend [the] complaint to cure [the] purported deficiency." *Rieger v. Wells Fargo Bank, Nat. Ass'n*, No. 3:13-0749-JSC, 2013 WL 1748045, at *3 (N.D. Cal. Apr. 23, 2013) (second alteration in original) (quotation omitted); *see also Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) (stating that remand is proper where "there is a non-fanciful possibility that plaintiff can state a claim").

The existence of federal jurisdiction is generally determined from the plaintiff's pleadings. *See Ritchey*, 139 F. 3d at 1318. On the issue of fraudulent joinder, however, a defendant is "entitled to present the facts showing the joinder to be fraudulent." *Morris*, 236 F.3d at 1067. If factual issues are in dispute, the Court must resolve "all disputed questions of fact . . . in the plaintiff's favor." *Hornby v. Integrated Project Mgmt., Inc.*, No. C 14-04331 LB, 2014 WL 7275179, at *5 (N.D. Cal. Dec. 22, 2014) (citing *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 (9th Cir. 1989)). While courts may not decide the merits of an affirmative defense to determine whether a plaintiff's claims obviously fail under the settled rules of the state, courts may

---

and plausibly exceeds $75,000. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553–54 (2014).

consider procedural bars such as statutes of limitation. *Hunter*, 582 F.3d at 1045 (citing *Ritchey*, 139 F.3d at 1319).

### B. Defendants Have Not Shown that Ms. Deakin Is Fraudulently Joined

Ms. Negherbon has asserted FEHA and IIED causes of action against Ms. Deakin. For the reasons described below, the Court concludes that the claims against Ms. Deakin do not obviously fail under settled California law.

#### 1. Hostile Work Environment Cause of Action under FEHA

As described below, the Court concludes that Defendants have not shown that Ms. Deakin cannot be liable for harassment under FEHA or that Ms. Negherbon failed to timely exhaust her administrative remedies with respect to Ms. Deakin.

##### a. Whether Ms. Deakin can be liable under FEHA

Under FEHA, a supervisor may be held individually liable for workplace harassment, while only an employer may be held liable for discriminatory employment actions. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009), *modified*, (Feb. 10, 2010). "[D]iscrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Id.* Harassment does not include "[c]ommonly necessary personnel management actions," such as reassignment, disciplinary warnings, and termination. *Id.* at 707–08 (quoting *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998)). These personnel management actions can, however, be evidence of harassment because "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Id.* at 709.

In the 2009 case *Roby v. McKesson Corp.*, the California Supreme Court clarified the distinction between harassment and discrimination under FEHA. *Id.* at 705–11. There, Roby brought claims under FEHA against her employer for discrimination, failure to accommodate her disability, and harassment, and she brought the harassment claim against her direct supervisor as well. *Id.* at 697. The jury found for Roby on all causes of action, but the appellate court reversed the jury's verdict on the harassment cause of action because of insufficient evidence. *Id.* at 700. The appellate court reasoned that because "commonly necessary personnel management actions"

do not constitute harassment, it should "sift[] out" "business and management" activities when assessing the sufficiency of the harassment evidence. *Id.* at 700, 710.

The Supreme Court reversed, reinstating the harassment verdict against the employer and Roby's supervisor. *Id.* at 720. The court reasoned that because official employment actions can communicate a hostile message, official actions against Roby should have been considered as evidence of harassment alongside other harassing actions. *Id.* at 708–09. The Court concluded that the evidence was "ample to support the jury's harassment verdict" against the employer and supervisor in light of the official employment actions against Roby—such as termination and disciplinary warnings—and the supervisor's harassing conduct, including "demeaning comments to Roby," "refusal to respond to Roby's greetings," "demeaning facial expressions and gestures towards Roby," and "disparate treatment of Roby in handing out small gifts." *Id.* at 708–10. *Roby* thus shows that under California law, a FEHA plaintiff may establish a supervisor's liability for harassment by providing evidence of hostile social interactions along with supplemental evidence of official employment actions that reinforce an underlying hostile message. *See id.* at 708–10.

With respect to Ms. Deakin, the FAC alleges a similar combination of hostile social interactions and official employment actions that may have reinforced an underlying hostile message, albeit to a lesser degree than the plaintiff proved at trial in *Roby*. For example, some of the specific allegations against Ms. Deakin may go beyond mere personnel management and may constitute the type of hostile social interactions that support a harassment claim under FEHA, such as the allegations that Ms. Deakin inquired into Ms. Negherbon's medical treatment, expressed disappointment about her condition, and declined to tell Ms. Negherbon when she could return to work. *See* FAC ¶¶ 18, 21. Because the FAC alleges that Ms. Deakin "dominated and controlled" the conduct of other actors, Ms. Negherbon further argues that additional hostile interactions such as such as refusing to respond to Ms. Negherbon's communications and mishandling her requested accommodations should also be attributed to Ms. Deakin. Reply at 3, 8 (citing FAC ¶¶ 8, 9, 39); *see*, *e.g.*, FAC ¶¶ 35, 38. While merely alleging that Ms. Deakin "dominated and controlled" the conduct of other actors is the type of conclusory allegation that the Court need not accept as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), Defendants have not demonstrated that Ms.

10

Negherbon could not amend the complaint to allege specific conduct by Ms. Deakin related to Wells Fargo's alleged refusal to respond to Ms. Negherbon's communications and her eventual termination. *See Rieger*, 2013 WL 1748045, at *3 (Remand is appropriate "unless the defendant shows that the plaintiff would not be afforded leave to amend." (quotation omitted)).

The remaining allegations against Ms. Deakin mostly comprise typical management actions, such as communicating with Ms. Negherbon about the timing of her return to work and hiring an employee into Ms. Negherbon's position because of business needs. *See* FAC ¶¶ 18, 21–23. These "commonly necessary personnel management actions" do not constitute harassment themselves, even if motivated solely by a discriminatory purpose. *See Reno*, 18 Cal. 4th at 646–47. However, given that the FAC includes the plausible allegations of hostile social interactions described above, Ms. Deakin's personnel actions may serve as confirmatory evidence of an underlying hostile message. *See Roby*, 47 Cal. 4th at 708–710. While the allegedly hostile conduct attributed to Ms. Deakin falls well short of that attributed to the supervisor in *Roby*, at the very least this Court cannot conclude that it is "obvious" according to "settled" California law that Ms. Negherbon's FEHA claim against Ms. Deakin necessarily fails. *See Morris*, 236 F.3d at 1067.

b.   Whether Ms. Negherbon has exhausted administrative remedies

Under FEHA, "[a]ny person claiming to be aggrieved by an alleged unlawful practice may file . . . a verified complaint" with DFEH. Cal. Gov. Code § 12960(a). The verified complaint must be filed within one year of "the date upon which the alleged unlawful practice or refusal to cooperate occurred." *Id.* § 12960(d). If DFEH does not pursue a civil action, the statute provides that DFEH "shall issue . . . [a] right to sue notice . . . indicat[ing] that the person claiming to be aggrieved may bring a civil action . . . against the person, employer, labor organization, or employment agency named in the verified complaint." *Id.* § 12965(b). A plaintiff must exhaust this administrative process as "a precondition to bringing a civil suit" under FEHA. *Rojo v. Kliger*, 52 Cal. 3d 65, 83 (1990).

The most recent specific conduct that is alleged against Ms. Deakin in the operative civil complaint is that Ms. Deakin sent a letter to Ms. Negherbon on April 30, 2013, confirming that

Wells Fargo would fill Ms. Negherbon's position because of business needs. FAC ¶¶ 21–22. The administrative complaint was filed on May 1, 2015, well over one year after this letter. Ms. Negherbon contends that the DFEH complaint is nevertheless timely because, regardless of the last personal interaction between Ms. Negherbon and Ms. Deakin, the complaint alleges that Ms. Deakin acted in concert with others to create a hostile work environment through the date of Ms. Negherbon's termination on May 9, 2014. Reply at 9. Ms. Negherbon further contends that Ms. Deakin can be liable for her entire course of harassing conduct that predates the one-year filing period under the continuing violation doctrine. *Id.* As described below, the Court concludes that California law does not clearly preclude application of the continuing violation doctrine to Ms. Negherbon's FEHA cause of action against Ms. Deakin. Because the Court reaches this conclusion, the Court need not determine whether the complaint alleges sufficient conduct by Ms. Deakin within the filing period to make the administrative complaint timely in the absence of the continuing violation doctrine.

Under the continuing violation doctrine, if an employer "engages in a continuing course of unlawful conduct under the FEHA by . . . engaging in disability harassment . . . the statute of limitations begins to run, not necessarily when the employee first believes that his or her rights may have been violated, but rather, *either* when the course of conduct is brought to an end . . . *or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001) (emphasis in original). "[A]n employer's persistent failure to reasonably accommodate a disability, or to eliminate a hostile work environment targeting a disabled employee, is a continuing violation if the employer's unlawful actions are (1) sufficiently similar in kind . . .; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." *Id.* As a threshold matter, the "plaintiff must demonstrate that at least one act occurred within the filing period." *Enal v. HMS Host USA, Inc.*, No. 10-CV01986 DMS BGS, 2011 WL 9607, at *2 (S.D. Cal. Jan. 3, 2011) (quoting *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 64 (2000)). Under California law, "[t]he existence of a continuing violation appears to be a question of fact." *Cuc Dang v. Sutter's Place, Inc.*, No. C-10-02181 RMW, 2012 WL 6203203, at *2 (N.D. Cal. Dec. 12, 2012)

(citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1059–60 (2005)).

Both the DFEH complaint and operative civil complaint meet the threshold requirement of alleging at least some conduct occurring within the one-year filing period, which ran from May 1, 2014, to May 1, 2015. In the DFEH complaint, which names Ms. Deakin as a co-respondent, Ms. Negherbon alleges, "From December 14, 2012 through and including May 9, 2014, on a continuing basis, I was denied a good faith interactive process, denied employment, denied reasonable accommodation, and terminated." Mot., Secrest Decl., Ex A, at 7:5–7. The coversheet of the DFEH complaint further states that "[o]n or around May 9, 2014, [Ms. Negherbon] alleges that respondent took the following adverse actions against [her]: . . . harassment/hostile work environment." *Id.* at 5:18. The allegations of the operative civil complaint describe two actions by the Defendants within the filing period. First, the complaint alleges that Wells Fargo falsely claimed Ms. Negherbon failed to timely respond to Ms. Price's letter from May 3, 2014, which Wells Fargo later cited as a reason for terminating Ms. Negherbon. FAC ¶ 36(b). Second, the complaint alleges that Wells Fargo fired Ms. Negherbon on May 9, 2014. *Id.* ¶ 38.

Whether the continuing violation doctrine applies thus depends on whether the actions within filing period are "sufficiently similar in kind" to those before the filing period. *See Richards*, 26 Cal. 4th at 823. In assessing this requirement, the *Richards* court cautioned that "similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms." *Id.* Assuming that the conduct that occurred within the filing period were attributable to Ms. Deakin, it would raise a triable issue of fact whether those actions were sufficiently similar in kind to the earlier actions. The operative complaint alleges that within the filing period, Defendants lied about the reasons for terminating Ms. Negherbon, when Ms. Negherbon had in fact been terminated because of her disability. FAC ¶¶ 36(b), 97. This action has some relation to Ms. Deakin's earlier alleged conduct, such as denying Ms. Negherbon's attempts to return to work and expressing disappointment about her medical condition, because each action may contribute to a hostile message based on Ms. Negherbon's disability.

Moreover, even if the conduct within the filing period were not attributable to Ms. Deakin,

1    it would not be obvious under settled California law that the continuing violation doctrine does not
2    apply to Ms. Negherbon's complaint.  That is, California's continuing violation doctrine may still
3    apply based on the conduct of other Wells Fargo employees within the filing period.  Defendants
4    have not cited any case that would foreclose a supervisor's harassing conduct from being
5    "sufficiently similar in kind" to subsequent harassing conduct by other actors for the continuing
6    violation doctrine to apply against the supervisor.  On the issue of fraudulent joinder, the Court
7    "may not make final determinations with regard to questions of state law that are not well-settled."
8    *Rieger*, 2013 WL 1748045, at *3 (N.D. Cal. Apr. 23, 2013) (quotation omitted).  Further, the
9    California Supreme Court has stated that FEHA's express policy in favor of liberal construction
10   "extends to interpretations of FEHA's statute of limitations."  *See Richards* 26 Cal. 4th at 819
11   (citing *Romano v. Rockwell Int'l Inc.* 14 Cal. 4th 479, 493–94 (1996)).  In light of this liberal
12   policy and the absence of on-point case law, there is at least a "non-fanciful possibility" that
13   California's continuing violation doctrine would apply against Ms. Deakin.

14   Defendants have submitted the declarations of Ms. Deakin and Mr. Kaufman in support of
15   their argument that Ms. Negherbon failed to timely exhaust administrative remedies, but neither
16   declaration changes the outcome of this analysis.  Even if the Court were to accept as true Ms.
17   Deakin's statements that she had no contact with Ms. Negherbon after April 30, 2013, and played
18   no role in the management decisions surrounding Ms. Negherbon's job search leave, the Court
19   could not conclude that the administrative complaint was untimely based on these statements.
20   Notably, the declaration does not state that Ms. Deakin had no role in the decision surrounding
21   Ms. Negherbon's *termination*.  *See* Opp'n, Deakin Decl. ¶¶ 5–6.  More importantly, a Defendant
22   opposing a motion to remand carries a "heavy burden," which it may not overcome with a single
23   self-serving declaration of a named Defendant, when there has been no discovery and the
24   declaration is contradicted by allegations in the complaint.  *See Hunter*, 582 F.3d at 1046.

25   Mr. Kaufman's declaration, in which he states he believes that Ms. Negherbon "amend[ed]
26   the complaint to add a California resident as a nominal defendant," similarly does not change the
27   Court's analysis.  *See* Opp'n, Kaufman Decl. ¶ 2.  To the extent that this declaration and the
28   attached administrative complaints against Wells Fargo imply that Plaintiff added Ms. Deakin as a

Defendant solely to defeat diversity, this point is irrelevant.  As Defendants conceded at oral argument, the Plaintiff's subjective reasons for adding a non-diverse Defendant are not a part of the analysis for the issue of fraudulent joinder.  *See Selman v. Pfizer, Inc.*, No. 11-CV-1400-HU, 2011 WL 6655354, at *10 (D. Or. Dec. 16, 2011) (collecting cases and concluding that testing the Plaintiff's intent would be "contrary to the standard in the Ninth Circuit").

Given the absence of on-point case law on the issue, and in light of California's policy to construe the FEHA statute—including its statute of limitations—liberally, the Court concludes that it is not "obvious" according to "settled" California law that the continuing violation doctrine does not apply against Ms. Deakin such that Ms. Negherbon failed to timely exhaust administrative remedies.  *See Morris*, 236 F.3d at 1067.  Because the Court concludes that California law does not obviously preclude application of the continuing violation doctrine, the Court need not determine whether the complaint alleges conduct by Ms. Deakin within the filing period that constitutes actionable harassment on its own.

### 2. Intentional Infliction of Emotional Distress Cause of Action

Ms. Negherbon's ninth cause of action alleges that Defendants intentionally inflicted emotional distress on her by engaging in discriminatory employment practices.  FAC ¶¶ 139–49.  As described below, the Court concludes that Ms. Negherbon's IIED claim against Ms. Deakin is not clearly barred by the WCA exclusivity provisions and does not obviously fail under settled California law.

#### a. Whether Workers' Compensation is the exclusive remedy

Workers' Compensation provides "the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment." Cal. Lab. Code § 3601(a).  "[A]n employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation," so long as the employer's conduct does not "contravene[] fundamental public policy" or "exceed[] the risks inherent in the employment relationship." *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754 (1992).  Emotional distress injuries arising from "workplace discipline, including termination, fall within this rule." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014) (citing

15

1  *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160 (1987)).  The parties agree that the
2  WCA exclusivity provisions generally bar California IIED claims, but the parties dispute whether
3  Ms. Negherbon's claim falls within one of the exceptions articulated in *Livitsanos*.

4  In 2008, the California Supreme Court addressed the scope of these exceptions in *Miklosy
5  v. Regents of the University of California*, 44 Cal. 4th 876 (2008).  There, the plaintiffs claimed
6  that they had been wrongfully terminated in retaliation for lodging safety complaints about a
7  project they worked on at the Lawrence Livermore National Laboratory.  *Id.* at 884.  The plaintiffs
8  claimed they had a valid cause of action for IIED against their supervisors based on their
9  employer's and supervisors' "outrageous conduct" at the worksite.  *Id.* at 902.  The court declined
10 to apply the "fundamental public policy" exception to the plaintiffs' claims arising from
11 whistleblower retaliation because "[t]he exception for conduct that 'contravenes fundamental
12 public policy' is aimed at permitting a *Tameny*[5] action to proceed despite the workers'
13 compensation exclusive remedy rule." *Id.* at 902–03 (footnote added).  The court further
14 concluded that whistleblower retaliation did not fall within the second exception because it did not
15 "exceed[] the risks inherent in the employment relationship." *Id.* at 903.  Defendants contend that
16 after *Miklosy*, the only permissible common law claim based on personnel actions against an
17 employee is a *Tameny* action.  Opp'n at 11–12.  Plaintiff contends that an action alleging "illegal
18 discriminatory practices [that] cause emotional distress to an employee" are not barred by *Miklosy*.
19 Mot. at 9.

20 The parties do not cite—and this Court is not aware of—any post-*Miklosy* California
21 appellate cases addressing the issue of whether an allegation of IIED arising from illegal
22 discrimination and harassment is barred by *Miklosy*.  Instead, the parties cite a number of federal
23 district court decisions interpreting *Miklosy*.[6]  In *Langevin v. Federal Express Corp.*, the court

---

[5] *Tameny* actions are common law actions against an employer for wrongful termination in violation of public policy.  *Miklosy*, 44 Cal. 4th at 900; *see also Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980).
[6] The Court notes that Defendants cite one state court decision, *Yau v. Santa Margarita Ford, Inc.*, but that case is not on point. In *Yau*, the court characterized *Miklosy* as holding "that even severe emotional distress arising from outrageous conduct that occurred at the worksite, in the normal course of the employer-employee relationship is the type of injury that falls within the exclusive province of workers' compensation." 229 Cal. App. 4th 144, 161–62 (2014).  There, the appellate

United States District Court
Northern District of California

concluded that the plaintiff's supervisors had been fraudulently joined as defendants because the plaintiff's IIED claims based on the supervisors' retaliatory acts were barred by *Miklosy*. No. CV 14-08105 MMM FFMX, 2015 WL 1006367, at *10–11 (C.D. Cal. Mar. 6, 2015) ("[The 'fundamental public policy' exception] operates only to permit assertion of a *Tameny* wrongful discharge in violation of public policy claim, *not* an IIED claim."). In *Elowson v. Jea Senior Living*, by contrast, the court concluded that the plaintiff's supervisors had not been fraudulently joined, where the plaintiff alleged that her emotional distress had been caused by her employer's and supervisors' harassment and discrimination on the basis of gender, medical conditions, and lawful taking of protected leave. No. 2:14-CV-02559-JAM-KJ, 2015 WL 2455695, at *1, *4 (E.D. Cal. May 22, 2015). There, the court reasoned that while "misconduct such as demotions, criticism and retaliation is a part of and within the risks inherent in the employment relationship," "[d]iscrimination based on race, religion, age, or gender is not a normal risk inherent in employment, and therefore workers' compensation is not the exclusive remedy" under *Miklosy*. *Id.* at 5.

Because *Elowson* dealt in part with allegations of harassment and discrimination on the basis of medical condition, whereas *Langevin* dealt with whistleblower retaliation, the Court concludes that *Elowson* is more relevant to Ms. Negherbon's allegations of harassment and discrimination. Moreover, based on the absence of on-point precedential California case law interpreting *Miklosy*, and given that federal district courts have reached different conclusions on this issue, the Court concludes that it is at least not "obvious according to the settled rules of the state" that the WCA exclusivity provisions bar a claim of IIED based on illegal discrimination and harassment. *See Morris*, 236 F.3d at 1067. As described with reference to Ms. Negherbon's fourth cause of action, the operative complaint alleges conduct that may constitute illegal harassment under California law. Accordingly, it is not clear that WCA exclusivity is a bar to the

---

court held that the trial court did not err in sustaining the defendants' demurrer to the employee's IIED cause of action, where the plaintiff's emotional distress was allegedly caused by employment retaliation actions he experienced for complaining to management about fraudulent warranty repair claims. *Id.* at 152–53, 162. Because *Yau* does not address a claim of illegal discrimination and harassment, it is not dispositive.

IIED claim against Ms. Deakin.

      b. Whether Ms. Deakin can be liable for IIED

  Defendants contend that apart from the issue of WCA exclusivity, "an individual manager cannot be held liable for IIED for personnel management activity such as demotion or termination of employment, even if the employment is alleged to have been motivated by discriminatory animus." Opp'n at 12. This contention correctly reflects settled California law, but as discussed with reference to Ms. Negherbon's FEHA cause of action, some of the conduct alleged against Ms. Deakin may go beyond mere personnel management and may constitute illegal harassment under California law. Moreover, typical personnel management activities may be performed in a deceitful, humiliating, or excessive manner that might fall outside the WCA exclusivity provisions and contribute to a claim of IIED. *See Wason v. Am. Int'l Grp., Inc.*, No. 09-CV-2752-LAB CAB, 2010 WL 1881067, at *3–7 (S.D. Cal. May 6, 2010) (collecting California cases and concluding a defendant had not been fraudulently joined because the plaintiff was "not clearly barred from bringing a claim [of IIED] against [her former supervisor] under the settled law of California" based on the supervisor's alleged mishandling of the plaintiff's medical disability leave). Accordingly, Ms. Negherbon has at least a "non-fanciful possibility" of prevailing against Ms. Deakin on her claim of IIED. *See Macey*, 220 F. Supp. 2d at 1117.

## IV. CONCLUSION

  For the reasons stated above, Plaintiff's Motion is GRANTED. The Clerk is instructed to remand this action to the San Francisco County Superior Court.

**IT IS SO ORDERED.**

Dated: October 21, 2015

                       _____
                       JOSEPH C. SPERO
                       Chief Magistrate Judge